<u>**FOR PUBLICATION**</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Håkan Moberg,<br>    Plaintiff,<br>      v.<br><br>33T LLC, Cedric Leygues, and<br>Erwan Leygues,<br>    Defendants. | CIVIL NO. 08-625(NLH)(JS)<br><br><br>**OPINION** |

**APPEARANCES:**

Stephen B. Brauerman
Peter B. Ladig
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899

Autumn J. Witt (*pro hac vice*)
Maurice Harmon (*pro hac vice*)
Harmon & Seidman LLC

    On behalf of plaintiff

James L. Higgins
Adam Wyatt Poff
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

    On behalf of defendants

**HILLMAN,** District Judge

    This case concerns defendants' use of plaintiff's copyrighted

photographs, and it raises issues of first impression with regard

to foreign copyrighted works posted on the Internet[1], as well as methods of service under the Hague Convention.  Defendants have moved to dismiss plaintiff's claims under the United States Copyright Act for lack of subject matter jurisdiction, defendant Erwan Leygues has moved to dismiss plaintiff's claims against him for lack of personal jurisdiction, and both individual defendants have moved to dismiss plaintiff's claims for improper service.  For the reasons expressed below, all of defendants' motions will be denied.

<u>**BACKGROUND**</u>[2]

Plaintiff, Håkan Mogerg, is a professional photographer living in Sweden.  In 1993, he created a series of photographs of a woman, titled "Urban Gregorian I-IX."  Plaintiff is the owner and exclusive copyright holder of these photographs.  The photographs were first published in 2004 on a German website, blaugallery.com, which is an online art shop that offers copies of the works for

---

[1]The two authorities governing copyrights implicated here-- the United States Copyright Act and the Berne Convention--were largely drafted and enacted prior to the widespread use of the Internet.  As discussed below, the term "publication" is dispositive of defendants' motion, but that term has not been redefined since the 1976 Copyright Act went into effect. Further, as also discussed below, the Berne Convention, which is an international copyright treaty, was originally adopted in 1886, and the most recent version was adopted in 1971, with the United States acceding to the union in 1988.

[2]Facts relevant to defendants' motion to dismiss are obtained from plaintiff's complaint, as is required by Federal Civil Procedure Rules 12(b)(1), (2) and (5).  Other background details are gathered from the parties' briefing.

sale as canvas prints stretched over a wooden framework.  Each of the Urban Gregorian photographs attributed the works to plaintiff.

At some point prior to December 2007, five of plaintiff's photographs were posted on the websites dynamicfactory.us, flashtemplate.us and myflashxml.com.  These websites sell website design templates, which customers purchase to avoid the costs associated with hiring a professional web developer to design their websites from the ground up.  Once a customer purchases the template, the customer uploads its own graphics, pictures, and text.  The websites dynamicfactory.us and myflashxml.com are registered to 33T LLC, a Delaware limited liability company, with a registered office in Delaware.  Defendant Cedric Leygues is also a registrant for dynamicfactory.us and myflashxml.com, and the sole operator and manager of 33T, responsible for the day-to-day operation of these websites.  Erwan Leygues is the registrant for falshtemplate.us and responsible for the day-to-day operation of that website.  Cedric Leygues and Erwan Leygues are citizens of, and reside in, France.

From at least December 2007 through March 2008, these websites displayed the Urban Gregorian images.  In March 2008, plaintiff's attorney contacted Cedric Leygues and 33T regarding their unauthorized use of plaintiff's photographs, and demanded that they cease their use.  When plaintiff filed his complaint in September 2008, some of his images had been removed, but others still

remained.[3]  Plaintiff claims that defendants have violated the
United States Copyright Act, 17 U.S.C. § 501 et seq., and the
Digital Millennium Copyright Act of 1998 ("DMCA"), 17 U.S.C. § 1201
et seq.

Defendants have moved for the dismissal of these claims on
several bases: (1) all defendants argue that this Court lacks
subject matter jurisdiction to hear plaintiff's Copyright Act
claims; (2) both Leygues defendants contend that plaintiff has
failed to properly serve them, and therefore the claims against
them must be dismissed; and (3) defendant Erwan Leygues contends
that all the claims against him must be dismissed because this
Court lacks personal jurisdiction over him.  Plaintiff has opposed
defendants' motion.[4]

## DISCUSSION

A.  **Jurisdiction**

Plaintiff contends that this Court has subject matter
jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and

---

[3]Defendants represent in their brief that all of the images
have since been removed from their websites.

[4]Following defendants' filing of their motion to dismiss,
defense counsel moved to be relieved as counsel because
defendants informed counsel not to take any further action on
their behalf, and that if they did, they would not be
compensated.  Magistrate Judge Joel Schneider denied without
prejudice counsel's motion, and allowed them leave to re-file the
motion following the resolution of the motion to dismiss.
(Docket No. 22.)  Defense counsel did not file a reply brief in
further support of their motion and in response to plaintiff's
opposition.

1338.  The Court resolves below the issue of whether subject matter jurisdiction exists for plaintiff's Copyright Act, 17 U.S.C. § 501 et seq., claims.[5]

**B.  Analysis**

As presented above, defendants present three bases for dismissal: (1) lack of subject matter jurisdiction for plaintiff's Copyright Act claims; (2) faulty service; and (3) lack of personal jurisdiction over Erwan Leygues.  Each argument will be addressed in turn.

1.  ***Whether this Court lacks subject matter jurisdiction to consider plaintiff's Copyright Act claims***

In order for this Court to have subject matter jurisdiction over a plaintiff's Copyright Act claim for an alleged infringement of a "United States work," the work must be registered according to

---

[5]As discussed herein, under the Copyright Act, a creator of a statutorily-defined "United States work" cannot bring an action for infringement of a copyright until either the copyright is registered in accordance with the relevant provisions of the Copyright Act or the Copyright Office has refused to register the copyright.  17 U.S.C. § 411(a).  The consensus among federal appellate courts is that the provisions of 17 U.S.C. § 411(a) are jurisdictional.  Walton v. U.S., 80 Fed. Cl. 251, 260 (Fed. Cl. 2008) (collecting cases).  Whether § 411(a) is actually a jurisdictional requirement is currently before the United States Supreme Court, however.  The Supreme Court granted certiorari in a Second Circuit case, In re Literary Works in Electronic Databases Copyright Litigation, 509 F.3d 116 (2d Cir. 2007), to consider the question: "Does 17 U.S.C. § 411(a) restrict the subject matter jurisdiction of the federal courts over copyright infringement actions?"  Reed Elsevier, Inc. v. Muchnick, ---U.S. ----, 129 S. Ct. 1523, 173 L. Ed. 2d 655 (2009).  Because the Court finds that plaintiff is not required to follow the provisions of § 411(a), we need not decide whether that section is a jurisdictional requirement or simply a precondition to suit.

the provisions in the Copyright Act.[6]  17 U.S.C. § 411(a) ("[N]o
civil action for infringement of the copyright in any United States
work shall be instituted until preregistration or registration of
the copyright claim has been made in accordance with this title.").
Defendants contend that plaintiff's Urban Gregorian photographs are
"United States works," which plaintiff has failed to register.
Because plaintiff's works are not registered, this Court lacks
subject matter jurisdiction to hear plaintiff's Copyright Act
claims against them.

What appears to be a simple premise actually joins an issue of
first impression not addressed by any court.  Defendants contend
that plaintiff's photographs, which were created undisputably
outside the United States, are United States works because when
they were posted on a German website, they were "published"
simultaneously in Germany and in the United States.  17 U.S.C. §
101 ("[A] work is a 'United States work' only if-- (1) in the case
of a published work, the work is first published-- . . . (B)
simultaneously in the United States and another treaty party or
parties, whose law grants a term of copyright protection that is
the same as or longer than the term provided in the United
States."[7]).  Defendants argue that it is "well settled that

_____

[6]See, supra, note 5.

[7]Germany is a "treaty party," see International Copyright
Relations of the United States at 4, available at
http://www.copyright.gov/circs/circ38a.pdf, and the United States

Internet publications are published everywhere simultaneously, regardless of the location of the server hosting the website." (Def. Br. at 7.)  Therefore, because the posting of a photograph on a website simultaneously "publishes" the photograph "everywhere," including the United States, it is a "United States work," and as such, it must be registered prior to filing suit for infringement.

Plaintiff does not dispute that he has never registered his photographs in the United States.  He contends, however, that defendants' premise is flawed because the posting of a photograph on a foreign country's website does not publish it simultaneously in the United States so as to transform the work into a "United States work."  Because it is not a "United States work" as contemplated by our law, plaintiff argues that he is not required to follow the registration requirement of § 411(a) in order for this Court to have subject matter jurisdiction over his Copyright Act claims.  The Court agrees with plaintiff, because, as explained below, the acceptance of defendants' position would overextend and pervert the United States copyright laws, and would be contrary to the Berne Convention.

As a primary matter, despite defendants' statement that it is "well settled" that "Internet publications are published everywhere

---

and Germany afford plaintiff, who created his work in 1993, the same protection of life of the author plus an additional 70 years, see http://www.copyright.gov/help/faq/faq-duration.html#duration; http://www.wipo.int/clea/en/text_html.jsp?lang=EN&id=976.

simultaneously," the issue is far from settled.  The two cases that
defendants cite to support that proposition only make the
observation that the Internet is located in no particular
geographical location and it is available to anyone worldwide.
(Def. Br. at 7, citing Reno v. American Civil Liberties Union, 521
U.S. 844, 849 (1997) (describing the Internet generally in the
context of a challenge to the constitutionality of state statutes
enacted to protect minors from "indecent" and "patently offensive"
communications on the Internet) and Nitke v. Gonzales, 413 F. Supp.
2d 262, 264 (S.D.N.Y. 2005) (discussing the breadth of the Internet
generally in the context of a constitutional challenge to the
Communications Decency Act of 1996, which its obscenity provisions
make it a crime to knowingly transmit obscenity by means of the
Internet to a minor)).  Indeed, defendants' citation to these
cases, and not to any case that directly supports their
proposition, evidences the lack of any court's consideration of the
issue, let alone a consensus on it.  Thus, in a case of first
impression, this Court must consider the correlation between the
posting of foreign copyrighted works on a foreign website and the
copyright holder's ability to file suit for infringement in the
United States pursuant to the United States Copyright Act.

    Even though no court has addressed the issue, plaintiff has
presented one legal scholar who has recognized the situation
presented here.  In his law journal article, Toward a Functional

8

<u>Definition of Publication in Copyright Law</u>, 92 Minn. L. Rev. 1724, 1749 (2008), Thomas Cotter considered, *inter alia*, the interrelation between the Copyright Act, the Berne Convention, and the Internet, and what constitutes "publication." First, Professor Cotter explains that "in 1988, the United States acceded to the 1971 Paris Act of the Berne Convention for the Protection of Literary and Artistic Works, an international copyright treaty that, among other things, reflects an unfavorable view of copyright formalities." Cotter, *supra*, at 1730-31. The effect of the United States' accession to the Convention "is to exempt works the country of origin of which is not the United States from the registration requirement."[8] <u>Id.</u> at 1743. Thus, at first blush, it appears that because plaintiff's photographs did not originate in the United States, they are not subject to the registration requirement, and such a formality is not a prerequisite to suit.

Professor Cotter explains, however, that the determination of the country of origin is not so simple, as that determination hinges on whether the work is "published," and, if so, where the work is published. For published works, under the Berne Convention, "[t]he country of origin shall be considered to be: (a)

_____

[8] The Union are those countries which have adopted the Berne Convention. The Convention provides that "[a]uthors shall enjoy, in respect of works for which they are protected under this Convention, in countries of the Union other than the country of origin, . . . the rights specially granted by this Convention," and that "[t]he enjoyment and exercise of these rights shall not be subject to any formality." Berne Convention, art. 5.

in the case of works first published in a country of the Union,[9]
that country; in the case of works published simultaneously in
several countries of the Union which grant different terms of
protection, the country whose legislation grants the shortest term
of protection . . . . " Berne Convention, art. 5(4). The United
States Copyright Act mimics this language: "[A] work is a 'United
States work' only if-- (1) in the case of a published work, the
work is first published-- . . . (B) simultaneously in the United
States and another treaty party or parties, whose law grants a term
of copyright protection that is the same as or longer than the term
provided in the United States." 17 U.S.C. § 101. For unpublished
works, the Berne Convention provides, "in the case of unpublished
works . . . the country of the Union of which the author is a
national." Berne Convention, art. 5(4)©. The United States
Copyright Act provides, "[A] work is a 'United States work' only
if-- . . . in the case of an unpublished work, all the authors of
the work are nationals, domiciliaries, or habitual residents of the
United States." 17 U.S.C. § 101.

Thus, the determination of whether plaintiff's photographs are
United States works depends on the resolution of two issues: (1)
whether the posting of plaintiff's photographs on the Internet is
considered "publishing," and, if so, (2) whether "publishing" on

---

[9]Germany is also a party to the Berne Convention. <u>See</u>
<u>International Copyright Relations of the United States</u> at 4,
available at http://www.copyright.gov/circs/circ38a.pdf.

the Internet causes the photographs to be published only in the country where the Internet site is located, or in every country around the world simultaneously.

Under the United States Copyright Act, "publication" means[10] "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending.  The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication.  A public performance or display of a work does not of itself constitute publication."  17 U.S.C. § 101.[11]  The Berne Convention provides, "The expression 'published works' means works published with the consent of their authors, whatever may be the means of manufacture of the copies, provided that the availability of such copies has been such as to satisfy the reasonable requirements of the public,

_____

[10]The U.S. Copyright Act has included a definition of the term "publication" only since January 1, 1978, the date the 1976 Copyright Act went into effect.  For publications occurring on or after January 1, 1978, "the statutory definition provides some guidance, but it still leaves many issues, such as the status of Internet transmissions, unresolved."  Cotter, *supra*, at 127.

[11]"To perform or display a work 'publicly' means-- (1) to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered; or (2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times." 17 U.S.C. § 101.

having regard to the nature of the work.  The performance of a
dramatic, dramatico-musical, cinematographic or musical work, the
public recitation of a literary work, the communication by wire or
the broadcasting of literary or artistic works, the exhibition of a
work of art and the construction of a work of architecture shall
not constitute publication."  Berne Convention, art. 3.

Professor Cotter explains that the question of whether an
Internet posting constitutes publication under U.S. law and the
Berne Convention remains unresolved.  Cotter, *supra*, at 1749.
Equating Internet postings with publication presents numerous
issues, which are outlined by Professor Cotter.  Id. at 1787-88
(summing up that "[o]n balance, despite some common-sense appeal to
the notion that works transmitted over the Internet are necessarily
published, and despite a plausible textual basis for reaching this
result, it is hardly obvious that this result would be desirable").
The Court does not need to delve into yet another unsettled issue,
however, because even assuming that the German website "published"
plaintiff's photographs, the Court holds that as a matter of U.S.
statutory law the photographs were not published simultaneously in
the United States.[12]

---

[12]Plaintiff represents in his complaint that his photographs,
although taken in 1993, were never "published" prior to their
posting on the German website in 2004.  (Compl. ¶ 10.)  The Court
assumes this representation to be true as it must when
considering a Rule 12(b)(1) motion.  See Priority Healthcare
Corp. v. Aetna Specialty Pharmacy, LLC, 590 F. Supp. 2d 663, 666
-67 (D. Del. 2008) (citing Gould Elec. Inc. v. United States, 220

As mentioned above, defendants argue that because plaintiff's photographs were posted on a website, and because those photographs were visible instantaneously all over the world, they were published in not only Germany, but also the United States.  This simultaneous publishing, defendants contend, subjected plaintiff to the formalities of the United States Copyright Act registration requirements, and those formalities must have been met prior to his ability to file suit against defendants for their infringement of his copyrighted works.  As also mentioned above, however, this argument is untenable.

First, the proposition that publishing a work on a website automatically, instantaneously, and simultaneously causes that work to be published everywhere in the world, so that the copyright holder is subjected to the formalities of the copyright laws of every country which has such laws is contrary to the purpose of the Berne Convention.  "The overarching purpose of the Berne Convention is to provide protection to authors whose works will be published in many countries."  Christopher Sprigman, Reform(aliz)ing Copyright, 57 Stan. L. Rev. 485, 544 (2004).  "Berne's proscription

---

F.3d 169, 176 (3d Cir. 2000)) (stating that in reviewing a facial challenge under Rule 12(b)(1), the standards relevant to Rule 12(b)(6) apply).  If these photographs had been "published" prior to the posting on the website, and that publication did not occur in the United States, the Court's analysis would be moot, because it could not be disputed that the photographs are not United States works, and therefore not subject to the registration requirements of the Copyright Act.

of mandatory formalities is a rational response to the difficulty of complying (and maintaining compliance) with differently administered formalities that may have been, absent the Convention, imposed in dozens of national systems, some with registries, some without, and none of which shares information." Id. (explaining that "[e]vidence for this view can be found in the origins of the Berne Convention"). Thus, if the publishing of plaintiff's photographs on the German website simultaneously caused them to be published in the United States, and such publication transformed the work into a United States work, plaintiff would be subjected to the very formalities that the Berne Convention eschews. To hold otherwise would require an artist to survey all the copyright laws throughout the world, determine what requirements exist as preconditions to suits in those countries should one of its citizens infringe on the artist's rights, and comply with those formalities, all prior to posting any copyrighted image on the Internet. The Berne Convention was formed, in part, to prevent exactly this result.[13]

Second, also based on the purpose of the Convention to constitute "a Union for the protection of the rights of authors in their literary and artistic works," Berne Convention art. 1, the transformation of plaintiff's photographs into United States works

---

[13]All informed intellectual property regimes recognize that unduly complicated protection prerequisites are likely to chill artistic expression.

simply by posting them on the Internet would allow American citizens to infringe on foreign copyrighted works without fear of legal retribution, since the majority of foreign works are never registered in America.  While not all Americans would exploit such an advantage, the misappropriation of intellectual property remains a significant problem and there is no principled reason why domestic users should be able to act with such impunity.

Third, the United States copyright laws, in accord with the Berne Convention, provide for protection of foreign works in the United States without requiring the artists to undertake any formalities in the United States.  See 17 U.S.C. § 408(a) (2000) ("[R]egistration is not a condition of copyright protection."); Kuklachev v. Gelfman, 600 F. Supp. 2d 437, 473 (E.D.N.Y. 2009) (citing Muchnick v. Thomson Corp., 509 F.3d 116, 133 (2d Cir. 2007)) ("Under the clear language of the statute, which refers only to 'any United States work,' foreign works originating in countries party to the Berne Convention need not comply with § 411."); Cotter, *supra*, at 1743-44, (explaining that "U.S. copyright subsists in unpublished works . . . from the moment of creation, wherever those works happen to be created.  Upon publication, . . . U.S. copyright continues to subsist in the work . . . if, "on the date of first publication, one or more of the authors is a national or domiciliary of the United States, or is a national, domiciliary, or sovereign authority of a treaty party, or is a stateless person,

wherever that person may be domiciled"). The adoption of
defendants' point of view would be contrary to that law.

Here, plaintiff is a citizen of Sweden, who enlisted a German
art gallery to sell his copyrighted photographs. That German art
gallery advertised the sale of plaintiff's photographs on the
Internet by posting an image of each of the photographs for sale.[14]
According to plaintiff's complaint, a United States company and two
French citizens who purportedly operate U.S. websites digitally
copied those images, and without authorization used those images on
their websites. To require plaintiff to register his photographs
in the United States prior to initiating suit against a United
States company and the registrants of U.S.-based websites for their
violation of United States law, which protects plaintiff's

_____

[14]The Court need not consider whether thumbnail images of a
copyrighted work, rather than the actual work itself, are subject
to copyright protection. Presumably, the art gallery scanned or
digitally imaged plaintiff's photographs so that they could be
displayed on its website. If that were the case, it would be
incongruous not to afford the thumbnail images the same copyright
protection as the original prints. See, e.g., Perfect 10, Inc.
v. Amazon.com, Inc., 487 F.3d 701, 711 (9th Cir. 2007)
(explaining what thumbnail images are and affording them
copyright protection). If not the original work itself, they are
protected derivatives. See 17 U.S.C. § 106(2) (copyright owner
has rights to derivative works). Of course, if plaintiff's
photographs were taken digitally, and the images posted on the
website were directly uploaded from plaintiff, those thumbnail
images would be plaintiff's original copyrighted work.
Regardless of the mechanics of posting the images of plaintiff's
photographs onto the website, the site contained attribution to
plaintiff for each of the works displayed. (Compl. ¶ 10.) Thus,
there is no question about who authored the images defendants
allegedly used without authorization on their websites.

16

copyrights, would flout United States law and the international union the U.S. has joined voluntarily.  Therefore, the Court finds that plaintiff's photographs are not "United States works," and, accordingly, his copyright infringement claims may stand without registration of the photographs.

**2.  *Whether plaintiff properly effected service on the individual French defendants***

The individual defendants, Cedric Leygues and Erwan Leygues, contend that plaintiff has failed to properly serve them, and therefore, all claims against them should be dismissed pursuant to Federal Civil Procedure Rule 12(b)(5).  Plaintiff argues that he has effected proper service, but if it is determined that service has not been sufficient, he requests that the Court quash his first attempts at service and permit him to re-serve the defendants.

The Federal Rules, in conjunction with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, outline methods of serving individuals in a foreign country.  Rule 4(f) provides that a foreign individual may be served at a place not within any judicial district of the United States:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention []; (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice: (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction; (B) as the foreign authority directs in response to a letter rogatory or letter of request; or © unless prohibited by the foreign country's law, by: (I)

delivering a copy of the summons and of the complaint to
the individual personally; or (ii) using any form of mail
that the clerk addresses and sends to the individual and
that requires a signed receipt; or (3) by other means not
prohibited by international agreement, as the court
orders.

Fed. R. Civ. P. 4(f).

Plaintiff undertook service of the French defendants via
certified mail.[15]  Plaintiff obtained the address of defendants
from the Internet Corporation for Assigned Names and Numbers
("ICANN"), which lists defendants' website registrations.  Two
registered letters sent to Erwan Leygues were both returned to
plaintiff's counsel as "unclaimed."  One registered letter sent to
Cedric Leygues was never returned, and the second registered letter
sent to him was returned to plaintiff's counsel as "unclaimed."
Plaintiff's counsel has filed three Affidavits of Non-Receipt of
Notice as to both defendants.  (Docket Nos. 9, 11, 16.)

There is support in case law that a French citizen may be
properly served by mail.  Research Systems Corp. v. IPSOS
Publicite, 276 F.3d 914, 926 (7th Cir. 2002) (finding that service
by simple certified mail is a method permitted by Article 10(a) of
the Hague Convention, so long as the foreign country does not
object, and France has not objected); Ramirez De Arellano v.
Colloides Naturels Intern., 236 F.R.D. 83, 87 (D. Puerto Rico 2006)
(finding that the "French Republic has acquiesced to service of

_____

[15]Defendant 33T, LLC does not contest service.

18

judicial documents pursuant to Article 10 of the Convention which
allows a plaintiff to serve process in one of three alternate
methods, to wit[]: 1) by sending a judicial document, by postal
channels, directly to persons abroad . . .").[16]  Further, the
service rules of Delaware, which are applied in federal court, <u>see</u>
Fed. R. Civ. P. 4(e)(1), contemplate the situation where a
defendant has refused to claim a properly addressed and timely
served certified letter.  10 Del. C. § 3104(h)(2) ("The return
receipt or other official proof of delivery shall constitute
presumptive evidence that the notice mailed was received by the
defendant or the defendant's agent; and the notation of refusal
shall constitute presumptive evidence that the refusal was by the
defendant or the defendant's agent."); <u>Franklin v. Millsboro
Nursing & Rehabilitation Center, Inc.</u>, 1997 WL 363950, *6 (Del.

---

[16]Plaintiff presents case law from several other circuits
that evidences a split on whether the Hague Convention permits
service via registered mail.  (Pl. Br. at 18 n.1.)  The Third
Circuit has not yet addressed the issue, and the district courts
within this Circuit have reached different results.  <u>See, e.g.</u>,
<u>Rogers v. Kasahara</u>, 2006 WL 6312904, *3 (D.N.J. 2006) (citing,
<i>inter alia</i>, <u>Raffa v. Nissan Motor Co.</u>, 141 F.R.D. 45 (E.D. Pa.
1991), which found that service by mail in Japan was contrary to
the Hague Convention, and  <u>Eli Lilly & Co. v. Roussel Corp.</u>, 23
F. Supp. 2d 460 (D.N.J. 1998), which rejected that finding); <u>In
re Harnischfeger Industries, Inc.</u>, 288 B.R. 79, 86 (Bkrtcy. D.
Del. 2003) (finding that service by registered mail to a
defendant in the United Kingdom is proper under the Hague
Convention).  A cursory review of the case law shows that the
determination of whether service via registered mail is proper
under the Hague Convention depends upon in which country the
plaintiff is attempting service.  This Court makes no specific
finding as to whether service by registered mail is proper in
France.

Super. 1997) (stating that once a plaintiff becomes aware that his
initial notice has not been received he may elect to prove
non-receipt by filing a § 3104(g) affidavit, but subjects himself
to the alternate procedure set forth in § 3104(d) which requires
the sending of a notice to the defendant not later than seven days
after filing the proof of non-receipt with the Court); <u>Meyer and</u>
<u>Meyer, Inc. v. Durme</u>, 2000 WL 33653417, *1 (Del. Com. Pl. 2000)
(explaining that 10 Del. C. § 9524 allows service to be effected by
certified mail and that a judgment be entered pursuant to
subsection 9524(b)(2) for unclaimed or refused mail).

Defendants filed their motion to dismiss prior to plaintiff's
filing of the Affidavits of Non-Receipt.  Since then, defendants
have not disputed that they live at the address plaintiff sent the
registered letters to, nor do they do not dispute that plaintiff
has followed Delaware law concerning unclaimed service.  Defendants
further do not dispute that France or the Hague Convention allows
for service by certified mail, and they do not indicate what method
of service plaintiff must otherwise utilize.  Most tellingly,
defendants do not claim that they have never refused certified
letters from plaintiff.  As contemplated by the Delaware service
rules, a defendant cannot simply ignore a registered letter to
avoid service of a complaint against him.

Here, however, where mail is sent abroad to foreign defendants
through multiple postal channels, issues of due process and comity

20

under the Hague Convention are implicated.  Indeed, plaintiff's
counsel represents that one registered letter has become
untraceable.  Even in those cases where process has not been
properly served on a defendant, "district courts possess broad
discretion to either dismiss the plaintiff's complaint for failure
to effect service or to simply quash service of process."
Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir. 1992).  Dismissal of a
complaint is inappropriate, however, when there exists a reasonable
prospect that service may yet be obtained, and "in such instances,
the district court should, at most, quash service, leaving the
plaintiffs free to effect proper service."  Id.  Therefore, under
the unique circumstances presented here, the Court will quash
plaintiff's prior attempts at service, and direct that he
accomplish service pursuant to the other avenues available to
him.[17]

---

[17]The U.S. State Department has issued a circular on the
preferred methods of serving an individual in France.  Those
methods include no-cost personal service through the French
Central Authority.  See http://travel.state.gov/law/
info/judicial/judicial_647.html#.  We note that service by mail
is not listed as an option.  While the State Department's general
view of proper service can not trump this Court's interpretation
of Delaware's service statute, it suggests caution in relying on
a domestic statute in construing the proper method of service on
international defendants.  We leave for another day whether
requiring the plaintiff to re-serve the international defendants
under circumstances where it is shown that plaintiff fully
complied with domestic service requirements entitles the
plaintiff to recover the additional service costs.  Cf., Fed. R.
Civ. P.4(d)(2)(allowing recovery of service and other costs where
defendant otherwise subject to service fails to waive service).

3.   ***Whether this Court can exercise personal jurisdiction
     over defendant Erwan Leygues***

Defendant Erwan Leygues has also moved to dismiss plaintiff's claims against him for lack of personal jurisdiction.  Jurisdiction under a state's long arm statute is measured by the defendant's specific contacts with the state.  A court can exercise jurisdiction over an out-of-state defendant only if it purposefully avails itself of the privilege of conducting activities within the forum state.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).  To prove that a defendant has purposefully availed itself of that state, a plaintiff may rely upon a defendant's specific contacts with the forum state, and specific jurisdiction is invoked when a claim is related to or arises of out the defendant's contacts with the forum.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).  In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum and the litigation."  Keeton v. Hustler, 465 U.S. 770 (1984).

If a defendant does not have specific contacts with the state, a court may exercise general jurisdiction if the defendant has maintained "continuous and systematic contacts" with the forum state.  Helicopteros, 466 U.S. at 416.  To establish general jurisdiction the plaintiff must show significantly more than mere minimum contacts with the forum state.  Provident Nat'l Bank v.

22

<u>California Fed. Sav. & Loan Ass'n</u>, 819 F.2d 434, 437 (3d Cir. 1987).

Once minimum contacts have been established, a court may inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" <u>Burger King Corporation</u>, 471 U.S. at 476 (citations omitted). For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state. <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 292 (1980).

If personal jurisdiction is contested, the plaintiff bears the burden to produce actual evidence, through sworn affidavits or other competent evidence, and not through bare pleadings alone, of the defendant's contacts with the forum. <u>Id.</u> (citing <u>Time Share Vacation Club v. Atlantic Resorts, Ltd.</u>, 735 F.2d 61, 66 and n.9 (3d Cir. 1984)). When the court does not hold an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, however, "the plaintiff need only establish a *prima facie* case of personal jurisdiction," <u>Miller Yacht Sales, Inc. v. Smith</u>, 384 F.3d 93, 97 (3d Cir. 2004), and the court must accept the plaintiff's evidence as true and resolve all disputed facts and draw all reasonable inferences in its favor. <u>Id.</u>

Here, Delaware's long arm statute provides,

As to a cause of action brought by any person arising from any of the acts enumerated in this section,

23

a court may exercise personal jurisdiction over any
nonresident, or a personal representative, who in person
or through an agent:

(1) Transacts any business or performs any character of
work or service in the State;
(2) Contracts to supply services or things in this State;
(3) Causes tortious injury in the State by an act or
omission in this State;
(4) Causes tortious injury in the State or outside of the
State by an act or omission outside the State if the
person regularly does or solicits business, engages in
any other persistent course of conduct in the State or
derives substantial revenue from services, or things used
or consumed in the State;
(5) Has an interest in, uses or possesses real property
in the State; or
(6) Contracts to insure or act as surety for, or on, any
person, property, risk, contract, obligation or agreement
located, executed or to be performed within the State at
the time the contract is made, unless the parties
otherwise provide in writing.

10 Del. C. § 3104(c).

Erwan Leygues argues that plaintiff's complaint merely parrots
the language in § 3104(c)(1) and that plaintiff's complaint is
devoid of any allegations that demonstrate that he actually
transacts business in Delaware.  Accordingly, Erwan Leyguens argues
that plaintiff has failed to establish specific jurisdiction over
him.  Additionally, Erwan Leyguens argues that he has no connection
with Delaware whatsoever, and therefore general jurisdiction is
lacking as well.  Moreover, Erwan Leyguens argues that the exercise
of personal jurisdiction over him would not comport with fair play
and substantial justice.

Erwan Leyguens' arguments are unavailing at this time.  In the
Third Circuit, even though "the mere operation of a commercially

interactive web site should not subject the operator to
jurisdiction anywhere in the world," "[i]f a defendant web site
operator intentionally targets the site to the forum state, and/or
knowingly conducts business with forum state residents via the
site, then the 'purposeful availment' requirement is satisfied."
Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452, 454 (3d
Cir. 2003).  In his complaint and opposition brief, plaintiff
provides evidence that Erwan Leyguens is the registrant for the
website flashtemplate.us, and that the website is available to
Delaware residents.  (Compl. ¶ 5 & Ex. 7; Pl. Br. at Ex. 2.)
Plaintiff has not provided evidence, however, that by maintaining a
website that is available in Delaware, Erwan Leyguens has
specifically targeted and conducted business with Delaware
citizens.

The same issue arose in Toys "R" Us.  There, the court found
that Toys "R" Us failed to satisfy the purposeful availment
requirement because the defendant's "web sites, while commercial
and interactive, do not appear to have been designed or intended to
reach customers in New Jersey"; the defendant's "web sites are
entirely in Spanish; prices for its merchandise are in pesetas or
Euros, and merchandise can be shipped only to addresses within
Spain.  Most important, none of the portions of [the defendant's]
web sites are designed to accommodate addresses within the United
States."  Toys "R" Us, 318 F.3d at 454.  The court recognized,

however, that "any information regarding [defendant's] intent vis-a-vis its Internet business and regarding other related contacts is known by [defendant], and can be learned by Toys only through discovery." Id. at 455. Accordingly, the court found that the district court erred when it denied Toys "R" Us the benefit of jurisdictional discovery.

In this case, Erwan Leyguens's website is in English and customers can purchase the website templates in U.S. dollars. Indeed, the address for the website contains a ".us" domain name, which "is the Internet country code top-level domain (ccTLD) for the United States, established in 1985[, and] [r]egistrants of .us domains must be United States citizens, residents, or organizations, or a foreign entity with a presence in the United States. See http://en.wikipedia.org/wiki/.us; see also http://www.nic.us/faqs/index.html#what_is_dotus. Thus, in contrast to Toys "R" Us, it is evident that Erwan Leyguens, through his website, is targeting United States customers. It is not clear, however, whether Erwan Leyguens has targeted Delaware specifically because only Erwan Leyguens holds that information. Accordingly, pursuant to the guidance of Toys "R" Us, the Court will deny defendant's motion without prejudice and direct the parties to undertake jurisdictional discovery limited to determining Erwan Leyguens's website's contacts with Delaware. Following the completion of that discovery, the Court will then determine whether

personal jurisdiction exists over Erwan Leyguens.[18]

**CONCLUSION**

For the reasons expressed above, defendants' motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction, improper service, and lack of personal jurisdiction is denied. Consistent with this Opinion, within 45 days, plaintiff shall re-serve Cedric Leyguens and Erwan Leyguens, and plaintiff and Erwan Leyguens shall then engage in jurisdictional discovery.  By the end of the 45 day period, plaintiff shall inform the Court of the status of the service of process and the outcome of the jurisdictional discovery.  An appropriate Order will be entered.


Date: October 6, 2009                    s/ Noel L. Hillman
                                   NOEL L. HILLMAN, U.S.D.J.

------------------------

     [18]In his affidavit in support of his motion, Erwan Leyguens does not comment on whether flashtemplate.us has conducted business with Delaware citizens.  Based on the evidence at this time, the Court finds that plaintiff has presented sufficient "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state," Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003) (internal quotations omitted), so that the exercise of jurisdiction over defendant is proper while jurisdictional discovery is conducted, see In Re Automotive Refinishing Paint Antitrust Lit., 358 F.3d 288, 303 (3d Cir. 2004) (citing Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 706 (1982)) (explaining where the defendants "have voluntarily appeared in the court to challenge jurisdiction and jurisdictional discovery is pending, the District Court indisputably has jurisdiction to determine whether there is personal jurisdiction upon completion of jurisdictional discovery").  Therefore, the Court will deny defendant's motion without prejudice, and allow defendant to renew his motion upon the completion of jurisdictional discovery, if appropriate.